**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ALBERT DANIELS, *et al.*<br><br>    Plaintiffs,<br><br>v.<br><br>APEX CALIFORNIA REGION HOLDCO, LLC, *et al.*<br><br>    Defendant(s). | Case No. 8:24-cv-02671-CV (KESx)<br><br>**ORDER GRANTING PLAINTIFFS' MOTION TO REMAND AND DENYING DEFENDANTS' MOTION TO COMPEL ARBITRATION**<br><br>**[DOC. ## 12, 28, 33]** |

On November 4, 2024, Plaintiffs Albert Daniels and Jacob Nails (collectively "Plaintiffs") filed this putative class action in Orange County Superior Court against their former employers, Defendants Home Comfort USA Heating, Cooling, Plumbing & Electrical, LLC ("Home Comfort"); Ken Starr, Inc.; and APEX California Region Holdco, LLC ("Apex"), alleging various wage and hour violations under California law. Doc. #1-1. Defendants removed the case under the Class Action Fairness Act ("CAFA") on December 9, 2024. Doc. #1. Before the Court are two motions: (1) Plaintiffs' January 8, 2025 motion to remand, Doc. # 12, and (2) Ken Starr, Inc.'s May 5, 2025 motion to compel arbitration, Doc. # 13, that Home Comfort and Apex have joined, Doc. #33. The Court finds both motions appropriate for decision without oral argument. Fed. R. Civ. P. 78; Local Rule 7-15. Because Defendants have not met their burden of satisfying CAFA's amount-in-controversy requirement, the Court GRANTS Plaintiffs' motion to remand and DENIES AS MOOT the motion to compel arbitration.

## I.    BACKGROUND

Plaintiffs assert eight claims under California law for (1) failure to pay overtime; (2) failure to provide meal periods; (3) failure to authorize and permit rest breaks; (4) failure to pay minimum wage; (5) failure to timely pay final wages at termination; (6) failure to provide accurate itemized wage statements; (7) failure to indemnify necessary business expenses; and (8) for violation of California's Unfair Competition Law. *See generally* Doc. # 1-1. Plaintiffs seek to represent a class defined as follows: "All current and former commission-based, hourly-paid or non-exempt employees of Defendants within the State of California at any time during the period from four years preceding the filing of this complaint to final judgment." *Id*. at ¶ 13. Plaintiffs' complaint does not specify the amount of damages sought.

Defendants removed this case under CAFA, contending that the amount in controversy exceeded $5,000,000. Doc. # 1.

## II. LEGAL STANDARD

CAFA provides that federal courts have subject matter jurisdiction over class actions in which the amount in controversy exceeds $5 million and any member of the class is a citizen of a state different from any defendant. 28 U.S.C. § 1332(d)(2). A party removing a case under CAFA bears the burden to demonstrate federal jurisdiction. *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 685 (9th Cir. 2006). Because Congress enacted CAFA to facilitate adjudication of certain class actions in federal court, "no antiremoval presumption attends cases invoking CAFA." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).

CAFA requires a removing defendant to provide a "'short and plain statement of the grounds for removal.'" *Id.* at 87 (quoting 28 U.S.C. § 1446(a)). The notice of removal "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Id.* at 89. When a defendant's allegations are challenged in a motion to remand, the defendant must show by a preponderance of the evidence that the amount in controversy exceeds CAFA's $5 million threshold. *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). In making this showing, a defendant may rely on reasonable assumptions. *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019). "[T]hose assumptions cannot be pulled from thin air but need some reasonable ground underlying them," and the removing party "bears the burden to show that its estimated amount in controversy relied on reasonable assumptions." *Ibarra*, 775 F.3d at 1199. Where a defendant "relie[s] on a reasonable chain of logic and present[s] sufficient evidence to establish that the amount in controversy exceeds $5 million," it has met its burden of proof. *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1201 (9th Cir. 2015).

## III. ANALYSIS

The question before the Court is whether Defendants have met their burden to show that the amount in controversy exceeds CAFA's $5 million threshold. Neither of the two theories Defendants have advanced in this litigation is persuasive; both rest on

unreasonable assumptions unsupported by evidence readily available to Defendants.

**A. Defendants' Notice of Removal Calculation Relies on Unreasonable Assumptions**

In their notice of removal, Defendants contend that the total amount in controversy is $7,665,219, which Defendants calculated by multiplying 219 (Defendants' estimate of the number of class members) by $35,000 (Defendants' estimate of the recovery per class member). Doc. # 1 at 11–12. This calculation relies on two unreasonable assumptions.

*First*, Defendants assume that "Plaintiffs believe that their own share of damages in this case is greater than $35,000" (*id*. at 11) because Plaintiffs alleged in their complaint that "[t]he monetary damages and restitution sought by Plaintiffs exceed the minimal jurisdiction limits of the Superior Court and will be established according to proof at trial." Doc. # 1-1 at ¶ 1. Several other courts in this district have found that this kind of allegation does not provide insight into a portion of the recovery that can be used to extrapolate the total amount in controversy and only establishes that the total amount in controversy exceeds the minimum jurisdiction limit of the Superior Court.[1] This Court agrees. It is unreasonable to infer from Plaintiffs' broad allegation that the action as a whole exceeds the Superior Court's jurisdictional minimum that each Plaintiff's individual claim exceeds $35,000.

*Second*, Defendants' calculation in the notice of removal assumes that each class member will have the same recovery as each named Plaintiff ($35,000), based on the

---

[1] *See, e.g., Sood v. FCA US, LLC*, No. CV 21-4287-RSWL (SKx), 2021 WL 4786451, at *3 (C.D. Cal. Oct. 14, 2021) (finding allegation that the plaintiffs "suffered damages in a sum to be proven at trial in an amount that is not less than $25,001.00" did not establish that "Plaintiffs' actual damages are at least $25,001.00," and instead could "very well have [been] included" to establish that "the total amount in controversy qualifies the case as unlimited in California Courts"); *Limon-Gonzalez v. Kia Motors Am., Inc.*, No. CV 20-4381 PA (JPRx), 2020 WL 3790838, at *2 (C.D. Cal. July 7, 2020) ("Numerous district courts in this Circuit have concluded that Plaintiffs' Complaint language—i.e., that Plaintiffs suffered 'damages in an amount that is not less than $25,001.00'—is too speculative to conclude that the amount in controversy is [satisfied]."); *accord*, *Anaya v. FCA US LLC*, No. CV217255 FMO (PVCx), 2022 WL 1778388, at *2 (C.D. Cal. May 31, 2022) (citing cases).

Plaintiffs' allegations that their claims are typical of the class. Doc. 1 at 11–12. "Typicality" is one of the prerequisites under the Federal Rules of Civil Procedure for an individual to serve as a class representative. Fed. R. Civ. P. 23 (a)(3) ("One or more members of a class may sue or be sued as representative parties on behalf of all members only if . . . the claims or defenses of the representative parties are typical of the claims or defenses of the class"). "Typicality refers to the nature of the claim or defense of the class representative, and *not* to the specific facts from which it arose *or the relief sought*." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (cleaned up, emphasis added). Just because a class representative meets the typicality requirement of Fed. R. Civ. P. 23(a) does not mean that the class representative will have the same amount of damages as every class member. *See White v. Experian Info. Sols., Inc.*, No. SACV051070 DOC (MLGx), 2009 WL 10670553, at *8 (C.D. Cal. May 7, 2009) ("[D]ifferences in the amount of damages will not defeat typicality"). Therefore, Defendant cannot assume each class member's damages equal those of the class representative just because Plaintiffs' have alleged that their claims are typical of the class.

For these reasons, the Court rejects Defendants' amount-in-controversy calculation in the notice of removal.

**B. Defendants' Opposition Brief Relies on Unreasonable Assumptions Unsupported by Competent Evidence Readily Available to Defendants**

In their opposition brief, Defendants make no effort to defend the calculations in their notice of removal. *See generally* Doc. #13. Instead, they abandon those figures and offer new calculations for five of Plaintiffs' claims, relying primarily on assumptions drawn from the complaint. From these new calculations, Defendants estimate $4,495,842 in damages and add 25% in attorneys' fees, yielding a total amount in controversy of $5,619,802.50. *See id*. at 15. These calculations are premised on several unreasonable assumptions, however.

*First*, Defendants assume a rate of pay of $18/hour for each putative class

member and use that rate to calculate the potential damages for Plaintiffs' unpaid minimum wage claim (Doc. # 13 at 10–11), overtime claim (*id*. at 12) meal period claim (*id*. at 13), and rest break claims (*id*.). Defendants derive this number from Plaintiff Daniels' weekly salary of $720, assume that this rate of pay is based on a 40-hour week, and use the corresponding $18/hour rate of pay for all putative class members. Doc. # 10–11.[2]

Defendants cite only to *Gallegos v. Atria Mgmt. Co., LLC*, in support of using Plaintiff Daniels' hourly rate of pay for all putative class members. Doc. # 13 at 11. In *Gallegos*, the court found that using the plaintiff's hourly rate of $9.55 was an appropriate assumption when calculating the amount in controversy on wage-and-hour claims. *Id* at *3 n.5. *Gallegos* is distinguishable, however, because there the defendant had submitted a declaration from its Director of Payroll Services providing the average hourly rate for the putative class members ($10.69). *Id*. at *3. Here, Defendants have not provided any evidence about the average rate of pay for putative class members, or any indication that Plaintiff Daniel's hourly rate was the same as other putative class members. The supporting declaration provided by Defendants does not comment on Plaintiff Daniels's or any other putative class members' rate of pay, nor does it state that $18/hour accurately captures the hourly wage for class members. *See generally* Doc. # 13-1. And this assumption is particularly questionable, given that the complaint alleges claims on behalf of different kinds of employees, including those who are paid on an hourly basis and others who are paid on a commission basis. *See* Compl. ¶ 13. Accordingly, the Court has no basis to assume that a rate of pay of $18/hour is an appropriate rate of pay to use for all class members and to calculate the amount-in-controversy in this case.

*Second*, Defendants use 23,652 for the number of workweeks in their calculation of the amount in controversy for Plaintiffs' unpaid minimum wage claim (Doc. # 13 at

---

[2] Defendants' opposition states only that "Plaintiff Daniels' paystubs are therefore used as the basis for the calculations herein," but does not provide these records for the Court's review. *See* Doc. # 13 at n.2

6

10-11), overtime claim (*id*. at 12), meal period claim (*id*. at 13), and rest break claims (*id*.). Defendants begin with the datapoint that 181 employees worked 4,612 workweeks from January 1 through the first week of December 2024. (Doc. #13; Doc. #13-1 ¶6). They then "extrapolate" to estimate 4,934 workweeks for all of 2024.[3] Dividing 4,934 by 181 yields an average of 27 workweeks per employee. Defendants multiply 27 workweeks by 219 putative class members to estimate 5,913 workweeks per year, then multiply that figure by four to reach 23,652 workweeks for the class period. This calculation is unreasonable and inflates the number, contradicting Defendants' limited data. The error lies in using 219 employees per year; Defendants' data shows only 181 employees worked in 2024, and they provide no evidence that 219 employees worked simultaneously in other years. *See* Doc. #13-1 ¶¶5–6. The 23,652 figure thus inflates 2024's workweeks (4,934 vs. 5,913) and lacks any basis to accurately estimate workweeks in other years. Defendants cite no authority for this method, and the Court finds it unreasonable.

Defendants make other assumptions about the violation rates for Plaintiffs' various claims based solely on Plaintiffs' allegations. For example, Defendants point to Plaintiffs' allegation of a "uniform policy and systematic scheme of wage abuse" and other general allegations in Plaintiffs' complaint to support their assumptions that putative class members were entitled to one hour of additional minimum wage owed per week (Doc. # 13 at 9-10), one hour of overtime per week (*id*. at 11-12), three rest period premiums per week (*id*. at 12-13), three additional meal premiums per week (*id*. at 12-13), and that every putative class member was given non-compliant wage statements for every workweek (*id*. at 13-14).

In *Garibay v. Archstone Communities, LLC*, 539 Fed. Appx. 763 (9th Cir. 2013), the Ninth Circuit rejected similar assumptions. There, the defendants supported their calculation of the amount in controversy with a declaration from their supervisor of

---

[3] Defendants do not explain this step, but it appears that they use a pro rata extrapolation for the remainder of 2024.

payroll, which set forth "the number of employees during the relevant period, the number of pay periods, and general information about hourly employee wages." *Id*. at 764. Beyond this declaration, the Defendants relied on assumptions about the violation rates for the putative class claims, including that "every single member of the class would be entitled to recover penalties for every single pay period" and "that each class member was wrongly denied a break twice each week." *Id*. The Ninth Circuit held that such assumptions were "speculative and self-serving" and affirmed the district court's conclusion that the evidence was insufficient to support removal jurisdiction under CAFA. *Id*. at 764–65.[4]

    Here, Plaintiffs' Opposition brief references a concurrently filed declaration from Ammye Clifton, the Regional Director of Employee Service (Head of People) for the parent company of Home Comfort. Doc. # 13-1 at ¶ 2. Ms. Clifton's declaration does not provide any information about hourly employee wages or the number of workweeks. Nor does the declaration offer any opinion on Defendants' assumptions that each putative class member is entitled to three meal-period premiums, three rest-period premiums, one hour of overtime, and one hour of minimum wage per week. Rather, the declaration uncritically adopts the violation rates asserted in Defendants' opposition brief and simply repeats their calculations without independent analysis or comment. *See, e.g.*, *id*. at ¶ 8 ("If each member of the putative class was entitled to one additional hour of overtime pay per week (at 1.5 times an hourly rate similar to Plaintiff's) that amount would total $630,604. ($18 x 23,652 = $638,604).").

    Every calculation in Defendants' opposition brief rests on some combination of

---

[4] *See also Waltz v. Wal-Mart Assocs., Inc.*, No. ED CV 2101538 TJH (RAOx), 2022 WL 489697, at *3 (C.D. Cal. Feb. 17, 2022) (finding defendant failed to provide sufficient evidence to "assume all 26,886 putative class members suffered the same number and degree of overtime, minimum wage, and meal and rest break violations" based on the plaintiff's "uniform practice" allegation alone); *Wilkins v. Navigant Cymetrix Co.*, No. CV 19-09755 PAM (RWx), 2020 WL 1972280, at *3 (C.D. Cal. Jan. 8, 2020) (rejecting as unreasonable defendants' assumptions that every putative class member was entitled to one hour of overtime per workweek, penalties for one meal period violation, and one rest break violation per workweek, and an attorneys fee award of 25% of the damage exposure).

the foregoing assumptions—assumptions that find little, if any, support in the sparse evidence Defendants have offered. Under Ninth Circuit law, "if a defendant wants to pursue a federal forum under CAFA, that defendant in a jurisdictional dispute has the burden to put forward evidence showing that the amount in controversy exceeds $5 million . . . and to persuade the court that the estimate of damages in controversy is a reasonable one." *Ibarra*, 775 F.3d at 1197. The Court finds it telling that Defendants have declined to support their assumptions with direct evidence, despite Ms. Clifton stating that she has "access to payroll documents and data . . . including employee salaries, pay structure, workweeks, commissions, overtime, wage statements, W-2 forms, payroll history and other reports" from software used for "both exempt and non-exempt employees," and that she has "direct personal knowledge regarding Defendants' corporate history, personnel files, payroll records, employee count and workplace policies." *Id*. at ¶ 4. Defendants could have submitted evidence from a reasonable random sampling of other putative class members to establish that the scope of damages is similar. Instead, they decided to limit their evidentiary presentation and rely on general allegations that do not meaningfully provide information about the scope of individual or collective harm. As a result, a court on this record can do little more than speculate that all putative class members suffered the same amount of harm from Defendants' alleged practices—and speculation is not enough to discharge a removing party's burden of production and persuasion.[5]

Accordingly, the Court rejects Defendants' calculation of potential damages for the alleged failure to pay overtime, minimum wage, provide meal and rest breaks and compliant wage statements offered in its opposition brief. Defendants have not supported the assumptions underlying their calculations, nor have they offered the Court any principled basis for considering reasonable alternatives. Any such

---

[5] Nor can Defendants shift their burden by arguing that Plaintiffs "have failed to show any evidence that [the amount in controversy] does not [exceed five million dollars]," Doc. # 13 at 9. *See Harris v. KM Indus., Inc.*, 980 F.3d 694, 700 (9th Cir. 2020) (holding that plaintiff need only make "a reasoned argument as to why any assumptions . . . are not supported by evidence").

9

alternative—such as using the California minimum wage instead of $18/hour, assuming only 181 employees per year instead of 219 to determine the total workweeks, or adjusting the weekly violation rates to 30 minutes of unpaid overtime, 30 minutes of unpaid minimum wage, one missed meal period, and one missed rest break—would be arbitrary. (Notably, these adjustments would reduce the amount in controversy to less than $5 million). Without a better alternative, the Court rejects Defendants' proffered calculations and finds that they have failed to meet their burden to show $5 million in controversy. *See Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 996 (9th Cir. 2022) ("Where a defendant's assumption is unreasonable on its face without comparison to a better alternative, a district court may be justified in simply rejecting that assumption and concluding that the defendant failed to meet its burden.").

## IV.  CONCLUSION

Because Defendants have not met their burden to show CAFA's amount-in-controversy requirement is satisfied, Plaintiffs' motion to remand is GRANTED. Defendants' motion to compel arbitration is DENIED AS MOOT.

**IT IS SO ORDERED**.

Dated: 6/23/25

*Cynthia Valenzuela*
HON. CYNTHIA VALENZUELA
UNITED STATES DISTRICT JUDGE